FILED'11 JAN 05 16:57USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| SHARON P. NELSON, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 10-18-MO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MOSMAN, J.,**

Plaintiff Sharon Nelson challenges the Commissioner's decision finding her not disabled under Title II of the Social Security Act and denying her application for Disability Insurance Benefits ("DIB"). The Court has jurisdiction under 42 U.S.C. § 405(g).

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). For the reasons stated below, I AFFIRM the Commissioner's decision.

## PROCEDURAL BACKGROUND

Ms. Nelson protectively filed for DIB and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act on November 30, 2004. AR 16.[1] After the Commissioner denied these applications, an Administrative Law Judge ("ALJ") held a hearing on November 16, 2007, and a supplemental hearing on January 7, 2008. *Id.* The ALJ found Ms. Nelson not disabled on June 26, 2008, and the Appeals Council denied review on November 13, 2009. AR 29, 6. Ms. Nelson timely appealed to this court on January 7, 2010.

## THE ALJ'S FINDINGS

The ALJ made her decision based upon the five-step sequential process established by the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987); *see also* 20 C.F.R. §§ 404.1520, 416.920 (establishing the five-step evaluative process for DIB and SSI claims). The ALJ found that Ms. Nelson had severe impairments, including: "history of multiple fractures to the left upper extremity with multiple surgeries, chronic low back pain with right radicular symptoms, bilateral knee pain, a posttraumatic stress disorder (PTSD) with panic symptoms, dysthymia with features of generalized anxiety, alcohol and drug abuse and dependence, and features of a borderline personality disorder." AR 18. However, the ALJ found that none of these impairments, either separately or in combination, met or equaled a disorder listed in the Commissioner's regulations. AR 19.

After evaluating the record, the ALJ assessed Ms. Nelson's residual functional capacity ("RFC"):

---

[1] Citations to "AR" refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on May 26, 2010 (#11).

PAGE 2 - OPINION AND ORDER

> [T]he claimant has the residual functional capacity to perform light work. Specifically, the claimant is capable of lifting and/or carrying 10 to 20 pounds occasionally and 10 pounds frequently with the right upper extremity, and capable of lifting and/or carrying 3 to 5 pounds occasionally and 10 pounds rarely with her left upper extremity. She is capable of sitting up to 8 hours in an 8 hour day in 30 minute increments and then needs to shift positions or stand less than a minute and sit again. She is capable of standing for at least 2 hours for no more than 6 hours in an 8 hour day in 30 minute increments and then needs to sit. She is capable of occasional stooping and must avoid bending, crouching, crawling, kneeling, and squatting. She is capable of frequent, but not rapid, reaching, handling, feeling, and grasping. She needs to avoid unprotected heights, hazards, vibrations, and concentrated exposure to dust, fumes, and gases. As to mental residual functional capacity, she is capable of performing simple repetitive tasks that do not require cooperation of co-workers, such as team work and close supervision, in a non-public setting.

AR 20. This RFC assessment was based on Ms. Nelson's testimony; opinions from treating, examining, and nonexamining medical sources; and statements by lay witnesses. AR 20–27.

The ALJ also found Ms. Nelson not credible for several reasons, including: (1) plaintiff's demonstrated lack of candor with medical professionals; (2) inconsistency between her subjective complaints and the objective evidence; (3) plaintiff's non-compliance with medical advice; and (4) plaintiff's sporadic medical care. AR 24–26.

Based on the testimony of a vocational expert, the ALJ concluded that Ms. Nelson's RFC enabled her to participate in occupations that exist in significant numbers in the national economy, such as the job of production assembler, packing line worker, outside deliverer, or sales support and inventory clerk. AR 29. Because the ALJ concluded that Ms. Nelson is capable of gainful employment, the ALJ found that she was not disabled within the meaning of the Social Security Act.

## ANALYSIS

Ms. Nelson contends that the ALJ's decision should be reversed because the ALJ

committed legal errors in reaching her decision and the decision is not based on substantial evidence. Specifically, Ms. Nelson argues that the ALJ erred by improperly rejecting certain medical source opinions and lay statements by her husband and two daughters. Ms. Nelson also alleges that the ALJ erred by omitting certain limitations from plaintiff's RFC, by omitting limitations from the ALJ's hypothetical to the vocational expert ("VE"), and by adopting the VE's opinion based on inadequate foundation.

Ms. Nelson does not challenge the ALJ's adverse credibility finding, however, so any argument against that finding is waived. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (holding that an argument not made in the opening brief was deemed waived). Based on the following analysis, I hold that the ALJ did not commit legal error and the ALJ's decision is supported by substantial evidence in the record.

## I.    Rejection of Medical Source Opinions

If a treating or examining physician's opinion is controverted by the opinion of another physician, an ALJ must cite specific, legitimate reasons for rejecting the physician's opinion, and those reasons must be based on substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). The sufficiency of the ALJ's reasons for rejecting a treating or examining physician's opinion depends on the source of the contravening opinion. For example, the opinion of an examining physician may be sufficient to reject a treating physician's opinion if the examining physician's opinion is based on independent clinical findings. *Andrews*, 53 F.3d at 1041. But an ALJ may not reject the opinion of an examining or treating physician by relying exclusively on the opinion of a nonexamining physician. *Lester*, 81 F.3d at 830. "The ALJ can meet [his or her] burden by

PAGE 4 - OPINION AND ORDER

setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Colton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971)).

The record reflects several medical opinions with varying conclusions about the nature and extent of Ms. Nelson's physical and mental limitations. The ALJ evaluated the record as a whole and rendered a decision that attempts to reconcile conflicting medical opinions. Because opinions varied, the ALJ necessarily credited some medical opinions at the expense of other opinions. When the ALJ considered a medical opinion to be consistent with the record as a whole, including other phsyicians' opinions, the ALJ assigned that aspect of the physician's opinion greater weight. For the reasons stated below, I find no legal error in the ALJ's evaluation of medical sources.

### A. *Dr. Saulino*

Dr. Saulino is a treating physician who rendered an opinion about the level of Ms. Nelson's impairment. Ms. Nelson argues that the ALJ erred by "effectively reject[ing]" Dr. Saulino's opinion. (Pl.'s Opening Br. (#16) 23.)

The ALJ offered a legitimate reason for giving "little weight" to Dr. Saulino's evaluation form. AR 27. That is, Dr. Saulino reported that his evaluation was based on Ms. Nelson's subjective reporting. AR 668, 670. Because the ALJ found Ms. Nelson not credible, it was reasonable for the ALJ to discount an evaluation that was based on Ms. Nelson's subjective

PAGE 5 - OPINION AND ORDER

reporting. *See, e.g., Bray*, 554 F.3d at 1228 (9th Cir. 2009) ("As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.")

Ms. Nelson argues that because Dr. Saulino performed an examination, including an MRI, his evaluation should be given more weight. However, the MRI was apparently negative, and Dr. Saulino explicitly stated that the only basis for his evaluation was plaintiff's subjective reporting. AR 667, 670. Therefore, I cannot say that the ALJ erred in giving Dr. Saulino's opinion little weight.

### B.   *Dr. Gibby-Smith*

Ms. Nelson argues that the ALJ erred by improperly rejecting portions of the opinion of Dr. Gibby-Smith, an examining psychologist who evaluated plaintiff in 2005, and filled out a "check-the-box" form for plaintiff in 2008. The ALJ explicitly incorporated Dr. Gibby-Smith's 2005 evaluation into her report, but gave little weight to the 2008 form, which was based entirely on the 2005 evaluation. AR 26.

In 2005, Dr. Gibby-Smith determined Ms. Nelson's global assessment of functioning ("GAF") score to be 60–65, indicating only mild-to-moderate symptoms.[2] AR 26, 638. Dr. Gibby-Smith also indicated that Ms. Nelson could concentrate well enough to complete simple tasks, that she was socially appropriate until she became irritable that the session went longer

---

[2] The GAF scale "does not have a direct correlation to the severity requirements in [the Commissioner's] mental disorders listings." 65 Fed. Reg. 50,746-1, 50,764–65 (Aug. 21, 2000). I consider the ALJ's treatment of Dr. Gibby-Smith's GAF score only to the extent the score reflects Dr. Gibby-Smith's opinion about the extent of Ms. Nelson's functional limitations.

PAGE 6 - OPINION AND ORDER

than she had expected, and that she "has limited adaptive abilities to situations and tasks." AR 637. The ALJ explicitly incorporated these limitations into Ms. Nelson's RFC by finding that plaintiff is capable only of "performing simple repetitive tasks that do not require cooperation of co-workers, such as team work and close supervision, in a non-public setting." AR 20, 26. The ALJ's incorporation of Dr. Gibby-Smith's 2005 evaluation was reasonable, and not error.

The ALJ's decision to give Dr. Gibby-Smith's 2008 evaluation form little weight was also reasonable. While Dr. Gibby-Smith did check boxes indicating Ms. Nelson was "markedly limited" in three areas, she also indicated that she had not seen Ms. Nelson since 2005 and could not say what her present circumstances were. AR 703–04. On the 2008 form, Dr. Gibby-Smith made no attempt to reconcile the "markedly limited" check marks with her 2005 evaluation indicating only mild-to-moderate symptoms. Because the 2005 evaluation did not support a finding of marked limitations, the ALJ gave little weight to the 2008 form. AR 26. The ALJ was permitted to consider this contradiction in deciding what weight to give the 2008 form, and her decision to give it little weight was reasonable. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that a discrepancy in a doctor's own notes was a "clear and convincing reason for not relying on the doctor's opinion") (citation omitted).

### C.   *Dr. Irwin*

Ms. Nelson argues that the ALJ improperly rejected portions of the opinion of Dr. Irwin, a consultative examining physician. The ALJ gave significant weight to the opinion of Dr. Irwin, and explicitly adopted the limitations he proposed, including the amount of time Ms. Nelson could sit or stand during a day, and the weight she could lift with each extremity. AR 20, 26.

PAGE 7 - OPINION AND ORDER

Ms. Nelson argues only that the ALJ failed to adopt Dr. Irwin's opinions that Ms. Nelson: (1) should avoid stooping; (2) requires breaks every 20 minutes when sitting; (3) should use an assistive device when walking; (4) is "somewhat slow on the right" when handling, feeling and grasping; (5) has "noted weakness and sensory changes" on her left side, which "potentially expos[es] her to injury"; and (6) has "occasional flare ups of tendons at the elbows, which may further limit her right side as well as her left." AR 631.

I conclude that although the ALJ did not explicitly address some of those limitations as outlined by Dr. Irwin, the ALJ crafted the RFC to incorporate Dr. Irwin's specific concerns in substance, if not verbatim. Moreover, to the extent that any omission by the ALJ was error, I find it to be harmless error. I address each alleged omission in order:

### 1. Stooping

Dr. Irwin's recommendation to "avoid stooping" is not inherently inconsistent with the RFC, which requires Ms. Nelson to avoid bending, crouching, crawling, kneeling, and squatting, but allows for "occasional stooping"; to do something only "occasionally" is to avoid it the vast majority of the time. AR 20. However, even if the ALJ erred by including "occasional stooping" in the RFC, at least two of the jobs identified by the VE—packing line worker and outside deliverer—do not require any stooping. *See* U.S. DEP'T OF LABOR, *DICTIONARY OF OCCUPATIONAL TITLES (DOT)*, #753.687-038 and #230.663.010. Therefore, I conclude that there still exists "substantial evidence supporting the ALJ's conclusions," and that any error "was inconsequential to the ultimate nondisability determination." *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454

PAGE 8 - OPINION AND ORDER

F.3d 1050, 1055 (9th Cir. 2006)).

### 2. Sitting in 20-minute Increments

The ALJ substantially adopted this limitation by stating in the RFC that Ms. Nelson is "capable of sitting up to 8 hours in an 8 hour day in 30 minute increments and then needs to shift positions or stand less than a minute and sit again." AR 20. Dr. Irwin had opined only that Ms. Nelson "might be expected to sit for approximately 6-8 hours a day with breaks every 20 minutes." Plaintiff provides no evidence that this 10-minute discrepancy is meaningful.

### 3. Assistive Device

Dr. Irwin said only that plaintiff "is *currently* using an assistive device *on occasion*" and that it "may be helpful." AR 631 (emphasis added). Plaintiff identifies nothing in that comment that mandates inclusion of an assistive device in Ms. Nelson's RFC.

### 4. Slow Right Side

The RFC states that Ms. Nelson cannot perform rapid reaching, handling, feeling, or grasping, and also that Ms. Nelson is only "capable of lifting and/or carrying 10 to 20 pounds occasionally and 10 pounds frequently with the right upper extremity." AR 20. These limitations likely address any concern that Ms. Nelson may be "somewhat slow" on her right side, and plaintiff does not indicate how any omission is meaningful.

### 5. Weak Left Side

The RFC includes limitations that adequately incorporate Dr. Irwin's opinion regarding Ms. Nelson's left-side weakness. In particular, that Ms. Nelson is only "capable of lifting and/or carrying 3 to 5 pounds occasionally and 10 pounds rarely with her left upper extremity." Plaintiff

PAGE 9 - OPINION AND ORDER

has not identified any specific aspect of this limitation that is not addressed by the RFC.

### 6. Occasional Elbow "Flare-ups"

Dr. Irwin did not indicate the frequency, severity, or effect of any elbow-tendon "flare ups," so it was not unreasonable for the ALJ to leave this vague remark out of the RFC. Moreover, the RFC's limitations, including those on reaching, handling, feeling, and lifting, would likely compensate for some periodic elbow limitations.

### D. *Nurse Practitioner Tommasi*

Ms. Nelson argues that the ALJ improperly rejected the opinion of Nurse Practitioner Tommasi, who opined that Ms. Nelson has a GAF score of 45–55 and that Ms. Nelson's ability to "maintain regular attendance and be punctual within customary, usually strict tolerances" was "severe." AR 692, 697. The ALJ gave "little weight" to Ms. Tommasi's opinion because she had only met with Ms. Nelson twice, and the first was an "intake" visit, which was likely based almost entirely on Ms. Nelson's subjective reporting. AR 27. Because no other basis for Ms. Tommasi's opinion is readily apparent from the documentation or plaintiff's briefing, the ALJ's inference was not unreasonable. And as discussed above, because the ALJ found Ms. Nelson's account of her symptoms not credible, it was reasonable for the ALJ to discount an opinion based primarily on Ms. Nelson's subjective reporting. *See Bray*, 554 F.3d at 1228; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [Mr.] Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.")

## II. Rejection of Lay Witness Testimony

Ms. Nelson argues that the ALJ improperly rejected the testimony of her husband and two daughters. Ms. Nelson is correct that when an ALJ disregards the testimony of lay witnesses, he or she must provide reasons "that are germane to each witness." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quotes and citations omitted). However, in this case, the ALJ gave compelling reasons that were equally germane to Ms. Nelson's husband and two daughters: Their testimony was nearly identical to that of Ms. Nelson, the ALJ did not find Ms. Nelson's reporting of her own symptoms credible, and the testimony of Ms. Nelson and her family was not supported by the medical evidence. AR 27. As in *Valentine*, when a family member's testimony mirrors the plaintiff's own complaints, which the ALJ has already found not credible, the ALJ has vicariously provided germane reasons for rejecting the family members' testimony. 574 F.3d at 694. Here, the ALJ was reasonable in giving greater weight to medical testimony than lay testimony.

## III. Formulating Ms. Nelson's RFC

Ms. Nelson's arguments about the RFC mirror her arguments regarding the ALJ's treatment of witness testimony. Because I found no reversible error in the ALJ's treatment of any testimony, I reject plaintiff's argument that the RFC was improperly formulated.

Plaintiff's only new argument is that the RFC did not incorporate potential side-effects from certain medications, as indicated by Dr. Saulino and Ms. Tommasi. Here, however, Dr. Saulino indicated only that two medications Ms. Nelson started in 2005 "taken at night can cause sleepiness/dizziness." AR 667. Ms. Nelson did not testify to any actual sleepiness or dizziness,

PAGE 11 - OPINION AND ORDER

nor has she explained here why sleepiness at night would be a problematic side-effect. Similarly, Ms. Tommasi did not indicate that Ms. Nelson was actually experiencing dizziness or drowsiness as a side effect of medication. Without any evidence or allegation that Ms. Nelson's medication actually caused side effects, I cannot say the ALJ erred by not including all theoretically possible side effects in Ms. Nelson's RFC.

### IV.     Hypothetical Presented to the VE

Ms. Nelson argues that the ALJ erred by failing to include all of plaintiff's limitations in the hypothetical posed to the VE, which the VE then used to determine what jobs are available to Ms. Nelson. Plaintiff's argument here is only a restatement of her position that the ALJ erred in rejecting certain testimony and in crafting the RFC. I have already determined that the ALJ did not err in those respects, or that any error was harmless, so I reject plaintiff's argument regarding the hypothetical to the VE.

### V.     Foundation of Vocational Expert's Testimony

Finally, Ms. Nelson argues that the ALJ erred by accepting the VE's testimony about the numbers of jobs available to Ms. Nelson at Step Five of the sequential process. Specifically, Ms. Nelson contends that the ALJ was required to consider letters plaintiff submitted from the United States Department of Labor and Commerce and the State of Oregon, which stated that these agencies do not track the number of jobs by DOT code. AR 234–40. It appears plaintiff is arguing that these letters undermine the foundation of the VE's testimony regarding the number of jobs in the economy.

However, the Ninth Circuit has explicitly held that an ALJ may rely on testimony by a

VE without additional foundation, because the "VE's recognized expertise provides the necessary foundation for his or her testimony." *Bayliss*, 427 F.3d at 1218. Relying on *Bayliss*, a Ninth Circuit panel specifically held in an unpublished opinion that an ALJ need not address such letters, because the letters were not affirmatively probative of the number of jobs available in the economy, and because the ALJ had reasonably relied on the VE's testimony. *Crane v. Barnhart*, 224 F. App'x 574, 577–78 (9th Cir. 2007) (unpublished). While that decision was unpublished, I agree with its reasoning and see no reason to reach a divergent outcome here on nearly identical facts.

## CONCLUSION

The Commissioner's decision that Ms. Nelson does not suffer from a disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported by substantial evidence. Therefore, the Commissioner's decision is AFFIRMED and Ms. Nelson's appeal is DISMISSED.

IT IS SO ORDERED.

Dated this 5 day of January, 2011.

MICHAEL W. MOSMAN
United States District Judge